

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DEC 1 3 2016

CLERK, U.S. DISTRICT COURT
By_____
          Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

MELINDA COFFELT,                   §
                                   §
          Plaintiff,               §
                                   §
VS.                                §    NO. 4:16-CV-933-A
                                   §
GALE DAVIS, OFFICIALLY/            §
INDIVIDUALLY, ET AL.,              §
                                   §
          Defendants.              §

<u>MEMORANDUM OPINION AND ORDER</u>

Came on for consideration the motions of defendant Tarrant County ("County"), and of defendants Tyra Sasita ("Sasita"), Bosede Odelipe ("Odelipe"), and Emily Foote ("Foote") (collectively, the individuals will be referred to as "Employees"), to dismiss. Plaintiff, Melinda Coffelt, has failed to respond to the motions, which are ripe for ruling. The court, having considered the motions, the record, and applicable authorities, finds that the motions should be granted.

I.

<u>Background</u>

Plaintiff filed her complaint on October 11, 2016, and has been granted leave to proceed <u>in forma pauperis</u>. Doc.[1] 1; Doc. 8. The complaint comprises 180 pages and is difficult to follow, but as best the court and defendants have been able to discern,

---

[1] The "Doc. __" reference is to the number of the item on the docket in this action.

plaintiff is basically complaining that her grandson was removed from her care on November 7, 2013, without due process of law. She purports to assert causes of action under 42 U.S.C. § 1983, Doc. 1 at 95-97[2], for "familial association, privacy, warrantless seizure and removal of child/unlawful detention, Doc. 1 at 97-99, for Monell-related claims, Doc. 1 at 99-107, for violation of state civil rights, Doc. 1 at 107-09, for negligent infliction of emotional distress, Doc. 1 at 109-10, for invasion of privacy, Doc. 1 at 111-12, for negligence, Doc. 1 at 112-13, for misrepresentation, Doc. 1 at 113-16, and for abuse of process, Doc. 1 at 117.

By order and final judgment as to certain claims, on October 17, 2016, the court dismissed the claims against Employees (and other individuals who have not been served) in their official capacities, The Texas Department of Family and Protective Services ("Department"), and the State of Texas for lack of jurisdiction. Plaintiff has not appealed from that ruling. In addition, by order and final judgment as to certain defendants signed November 28, 2016, the court has dismissed plaintiff's claims against defendants Lisa Black and Jacqueline Freeman for want of prosecution.

---

[2]The page number references are to the numbers assigned by the court's electronic filing system.

II.

## Grounds of the Motions

Movants urge that plaintiff has failed to state plausible claims for relief against them and that dismissal as authorized by Fed. R. Civ. P. 12(b)(6) is appropriate.

III.

## Applicable Legal Principles

A.   Pleading

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. Twombly, 550 U.S. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. See Ashcroft v. Iqbal,

3

556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Moreover, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. Iqbal, 556 U.S. at 678. To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. Id. In other words, where the facts pleaded do no more than permit the court to infer the possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. Id. at 679. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

In considering a motion under Rule 12(b)(6), the court may consider documents attached to the motion if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. Scanlan v. Tex. A&M Univ., 343 F.3d 533, 536 (5th Cir. 2003). The court may also refer to matters of public record. Davis v. Bayless, 70 F.3d 367, 372 n.3 (5th Cir. 1995); Cinel v. Connick, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). This includes

4

taking notice of pending judicial proceedings. Patterson v. Mobil Oil Corp., 335 F.3d 476, 481 n.1 (5th Cir. 2003).[3] And, it includes taking notice of governmental websites. Kitty Hawk Aircargo, Inc. v. Chao, 418 F.3d 453, 457 (5th Cir. 2005); Coleman v. Dretke, 409 F.3d 665, 667 (5th Cir. 2005).[4]

If, based on the facts pleaded and judicially noticed, a successful affirmative defense appears, then dismissal as authorized by Rule 12(b)(6) is appropriate. Kansa Reinsurance Co., Ltd. v. Cong. Mortgage Corp., 20 F.3d 1362, 1366 (5th Cir. 1994); Watts v. Graves, 720 F.2d 1416, 1422-23 (5th Cir. 1983).

B.   Limitations

"There is no federal statute of limitations for actions brought pursuant to 42 U.S.C. § 1983." Jackson v. Johnson, 950 F.2d 263, 265 (5th Cir. 1992). The Supreme Court has instructed courts to borrow the forum state's general personal injury limitations period, which in Texas is two years. See Tex. Civ. Prac. & Rem. Code § 16.003(a); Piotrowski v. City of Houston, 237 F.3d 567, 576 (5th Cir. 2001). The point at which a claim accrues, however, is determined by federal law. Wallace v. Kato, 549 U.S. 384, 387-88 (2007). Under federal law, a cause of

---

[3] In this case, the court takes judicial notice of the state court proceedings involving plaintiff's grandson, in particular, Exhibits A-D, F, H, and I of County's Appendix, Docs. 23 and 26.

[4] Accordingly, the court takes judicial notice of the materials included as Exhibits E and G of County's Appendix, Doc. 23.

action accrues when the plaintiff has "a complete and present cause of action." Id. at 388. Stated differently, under § 1983, "the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." Walker v. Epps, 550 F.3d 407, 414 (5th Cir. 2008). A plaintiff's awareness encompasses two elements: (1) the existence of the injury, and (2) causation, that is, the identity of the person who caused the injury. Stewart v. Parish of Jefferson, 951 F.2d 681, 684 (5th Cir. 1992). A plaintiff need not understand that a legal cause of action exists; she need only know the facts that would support a claim. Harrison v. United States, 708 F.2d 1023, 1027 (5th Cir. 1983).

C.   County Liability

A governmental entity, such as County, can be subjected to monetary damages or injunctive relief under § 1983 only if one of its official policies caused a person to be deprived of a federally protected right.[5] Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). County cannot be held liable under a theory of respondeat superior or vicarious liability. Id. Instead, liability may be imposed against a local government entity under

_____

[5]Violations of state law and judicial and regulatory procedure provide no basis for a § 1983 claim. Calhoun v. Hargrove, 312 F.3d 730, 734 (5th Cir. 2002).

§ 1983 only "if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation." <u>Connick v. Thompson</u>, 563 U.S. 51, 131 S. Ct. 1350, 1359 (2011) (quoting <u>Monell</u>, 436 U.S. at 692) (internal quotation marks omitted).   To hold County liable under § 1983 thus requires plaintiff to "initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted." <u>Spiller v. City of Texas City, Police Dep't</u>, 130 F.3d 162, 167 (5th Cir. 1997) (internal quotation marks and citation omitted). Therefore, liability against local government defendants pursuant to § 1983 requires proof of a policymaker, an official policy, and a violation of constitutional rights whose "moving force" is the policy or custom.   <u>Piotrowski</u>, 237 F.3d at 578.

The Fifth Circuit has been explicit in its definition of an "official policy" that can lead to liability on the part of a governmental entity, giving the following explanation in an opinion issued <u>en banc</u> in response to a motion for rehearing in <u>Bennett v. City of Slidell</u>:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by

officially adopted and promulgated policy, is so common
and well settled as to constitute a custom that fairly
represents municipal policy. Actual or constructive
knowledge of such custom must be attributable to the
governing body of the municipality or to an official to
whom that body had delegated policy-making authority.

Actions of officers or employees of a municipality do
not render the municipality liable under § 1983 unless
they execute official policy as above defined.

735 F.2d 861, 862 (5th Cir. 1984) (per curiam).

D.   <u>Qualified Immunity</u>

Qualified immunity insulates a government official from

civil damages liability when the official's actions do not

"violate clearly established statutory or constitutional rights

of which a reasonable person would have known." <u>Harlow v.</u>

<u>Fitzgerald</u>, 457 U.S. 800, 818 (1982).  For a right to be "clearly

established," the right's contours must be "sufficiently clear

that a reasonable official would understand that what he is doing

violates that right." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640

(1987).  Individual liability thus turns on the objective legal

reasonableness of the defendant's actions assessed in light of

clearly established law at the time. <u>Hunter v. Bryant</u>, 502 U.S.

224, 228 (1991); <u>Anderson</u>, 483 U.S. at 639-40.  In <u>Harlow</u>, the

court explained that a key question is "whether that law was

clearly established at the time an action occurred" because "[i]f

the law at that time was not clearly established, an official

could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." 457 U.S. at 818. In assessing whether the law was clearly established at the time, the court is to consider all relevant legal authority, whether cited by the parties or not. Elder v. Holloway, 510 U.S. 510, 512 (1994). If public officials of reasonable competence could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity. Malley v. Briggs, 475 U.S. 335, 341 (1986); Fraire v. City of Arlington, 957 F.2d 1268, 1273 (5th Cir. 1992). "[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." Malley, 475 U.S. at 341.

In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether plaintiff has alleged any violation of a clearly established right, and, if so, whether the individual defendant's conduct was objectively reasonable. Siegert v. Gilley, 500 U.S. 226, 231 (1991); Duckett v. City of Cedar Park, 950 F.2d 272, 276-80 (5th Cir. 1992). In so doing, the court should not assume that plaintiff has stated a claim, i.e., asserted a violation of a constitutional right. Siegert, 500 U.S. at 232. Rather, the court must be certain that, if the facts alleged by plaintiff are true, a violation has

clearly occurred. <u>Connelly v. Comptroller</u>, 876 F.2d 1209, 1212

(5th Cir. 1989). A mistake in judgment does not cause an officer

to lose his qualified immunity defense. In <u>Hunter</u>, the Supreme

Court explained:

> The qualified immunity standard "gives ample room for
> mistaken judgments" by protecting "all but the plainly
> incompetent or those who knowingly violate the law."
> <u>Malley</u>, [475 U.S.] at 343. . . . This accommodation for
> reasonable error exists because "officials should not err
> always on the side of caution" because they fear being sued.
> . . .

502 U.S. at 229.

When a defendant relies on qualified immunity, the burden is

on the plaintiff to negate the defense. <u>Kovacic v. Villarreal</u>,

628 F.3d 209, 211 (5th Cir. 2010); <u>Foster v. City of Lake</u>

<u>Jackson</u>, 28 F.3d 425, 428 (5th Cir. 1994).

E.   <u>Sovereign Immunity</u>

Under the doctrine of sovereign immunity applicable to state

law claims in Texas, a governmental entity cannot be held liable

for the actions of its employees unless a constitutional or

statutory provision waives the entity's sovereign immunity in

clear and unambiguous language. <u>See   Univ. of Tex. Med. Branch v.</u>

<u>York</u>, 871 S.W.2d 175, 177 (Tex.1994); <u>Duhart v. State</u>, 610 S.W.2d

740, 742 (Tex.1980). That means that, absent waiver, the State,

its agencies and subdivisions are shielded from suit and

liability for their acts, "however improvident, harsh, unjust, or

infuriatingly boneheaded these acts may seem." <u>Bacon v. Texas</u> <u>Historical Comm'n</u>, 411 S.W.3d 161, 172 (Tex. App.-Austin 2013, no pet.).

The Texas Tort Claims Act provides a limited waiver of sovereign immunity in certain circumstances. Tex. Civ. Prac. & Rem. Code § 101.025; <u>York</u>, 871 S.W.2d at 177. To state a claim under the Act, the plaintiff must allege an injury resulting from the use of publicly-owned automobiles or a "condition or use of tangible personal or real property." Tex. Civ. Prac. & Rem. Code § 101.021; <u>Texas Dep't of Pub. Safety v. Petta</u>, 44 S.W.3d 575, 580 (Tex. 2001). Information, however, is not tangible personal property. <u>Id.</u> Thus, use or misuse of a governmental or court record is not a claim for which immunity has been waived. <u>Dallas</u> <u>County v. Harper</u>, 913 S.W.2d 207, 207-08 (Tex. 1995). Moreover, the Act does not waive immunity with respect to claims "arising out of assault, battery, false imprisonment, or any other intentional tort." Tex. Civ. Prac. & Rem. Code § 101.057(2); <u>see</u> <u>Goodman v. Harris County</u>, 571 F.3d 388, 394 (5th Cir. 2009).

When a plaintiff asserts any tort theory against a governmental unit, her claim is held to arise under the Texas Tort Claims Act. <u>Mission Consol. Indep. Sch. Dist. v. Garcia</u>, 253 S.W.3d 653, 659 (Tex. 2008). And, by electing to sue a governmental employer, a plaintiff makes an irrevocable election

to pursue state law tort claims against the employer only. Molina
v. Alvarado, 463 S.W.3d 867, 871 (Tex. 2015); Tex. Civ. Prac. &
Rem. Code § 101.106(a). Thus, when a suit is filed against a
governmental unit and any of its employees, the employees must be
immediately dismissed if such a request is made by motion of the
employer. Tex. Civ. Prac. & Rem. Code § 101.106(e); Mission
Consl., 253 S.W.3d at 659.

IV.

Analysis

A.   Plaintiff's Claims Are Barred By Limitations

Movants urge that plaintiff's claims are barred by
limitations, all of them being subject to a two-year limitations
period. Tex. Civ. Prac. & Rem. Code § 16.003(a); Drake v.
Fitzsimmons, No. 3:12-CV-1436-B, 2013 WL 775354, at *2 (N.D. Tex.
Mar. 1, 2013)(abuse of process, negligence, intentional
infliction of emotional distress); Martz v. Weyerhaeuser, 965
S.W.2d 584, 587 (Tex. App.–Eastland 1998, no pet.)
(misrepresentation, negligence, gross negligence, conspiracy,
emotional distress); Stevenson v. Koutzarov, 795 S.W.2d 313, 318-
19 (Tex. App.–Houston [1st Dist.] 1990, writ denied)(invasion of
privacy, emotional distress). Here, plaintiff has pleaded that
she was injured and knew that she was injured at the time her
grandson was removed from her care on November 7, 2013. She

12

states this throughout her complaint. <u>E.g.</u>, Doc. 1 at 23, 26, 36-37, 64, 122-23, 153-54, 158-59, 174. In addition, plaintiff admits that she received notice on January 23, 2014, that she had been removed as her grandson's temporary possessory conservator with right of physical possession of him. Doc. 1 at 36, 39, 85, 123, 125, 146, 147, 157, 165, 170. Plaintiff says that she has been continually harmed and has been trying to study the legal aspects of the case since November 7, 2013. Doc. 1 at 174. She maintains that her causes of action accrued on October 7, 2014, when "after an hour on the Internet everything that had happened became Clear." Doc. 1 at 37.

The limitations period began to run the moment the plaintiff became aware that she had suffered an injury or had sufficient information to know that she had been injured. <u>Walker</u>, 550 F.3d at 414. That date is November 7, 2013, more than two years before the filing of this action. And, even if that date is October 7, 2014, as plaintiff contends, her complaint was filed more than two years later.[6]

It appears that all of plaintiff's claims flow from the taking of her grandson from her possession. To the extent that plaintiff might contend that she is asserting a continuing

---

[6]The so-called "mailbox rule" only applies to prisoners and is of no benefit to plaintiff here. <u>Houston v. Lack</u>, 487 U.S. 266 (1988).

13

violation so as to prevent the running of limitations, the continuing violation doctrine does not apply to claims under § 1983. Foddrill v. McManus, No. SA-13-CV-00051-XR, 2013 WL 6198228, at *3 (W.D. Tex. Nov. 26, 2013). Plaintiff has not pleaded any facts that would extend the limitations period for any of her state law claims.[7]

B.   County

As noted above, County cannot be held vicariously liable under § 1983 for the actions of any of its employees. Monell, 436 U.S. at 694. But, in any event, it does not appear that any employees of County were involved in the events giving rise to plaintiff's claims. (Even if they were, the enforcement of state law or policy does not constitute action of County. Esteves v. Brock, 106 F.3d 674, 678 (5th Cir. 1977).) Rather, the individuals about which plaintiff complains are or were employees of the State of Texas through Department. And, as the authorities County cites make clear, child welfare is state administered. See, e.g., Tex. Hum. Res. Code § 40.002; Tex. Fam. Code ch. 262, 264. Nor has plaintiff pleaded sufficient facts to show that County had any policy that harmed, much less could have harmed, plaintiff. Piotrowski, 237 F.3d at 578.

---

[7]Even though it appears that all of plaintiff's claims are barred by limitations, the court is addressing other grounds raised in support of the motions to dismiss.

As for the state law claims, each of plaintiff's claims is an intentional tort[8] for which immunity has not been waived. See Kojo Wih Nkansah v. Univ. of Tex. at Arlington, No. 02-10-00322-CV, 2011 WL 4916355, at *3 (Tex. App.–Fort Worth Oct. 13, 2011, pet. denied); Burdett v. Doe, No. 03-06-00198-CV, 2008 WL 5264913, at *3 (Tex. App.–Austin Dec. 17, 2008, no pet.); Harris v. Francis, No. 05-99-00866-CV, 2000 WL 175588, at *4 (Tex. App.–Dallas Feb. 16, 2000, no pet.). And, the claims do not involve a condition or use of tangible personal property. Tex. Civ. Prac. & Rem. Code § 101.021.

Finally, as County notes, to the extent plaintiff is asking this court to undo rulings of the family court, relief is barred by the Rooker-Feldman doctrine. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 290-91 (2005).

C.   Employees

As Employees note, plaintiff lacks standing to assert unlawful removal claims under the Fourth Amendment as those claims belong solely to her grandson. Alderman v. United States, 394 U.S. 165, 174 (1969). Employees otherwise assert that they are entitled to qualified immunity with regard to plaintiff's § 1983 claims. The court agrees.

---

[8]Texas does not recognize a claim for negligent infliction of emotional distress. City of Tyler v. Likes, 962 S.W.2d 489, 494 (Tex. 1997).

Plaintiff makes very few specific factual allegations regarding the conduct of Employees. She says that Sasita was the supervisor of defendant Gale Davis in December 2013 and the supervisor of Amanda Duke, Doc. 1 at 57, and Sasita never made any attempt to go to plaintiff's house, Doc. 1 at 90. In a paragraph titled "Tyra Sasita," plaintiff alleges:

> Defendant Sasita continued the process started by
> Defendant Davis and Defendant Bose which includes
> failing to supervise or punish Defendant Duke for
> actions that where [sic] false and misleading.
> Including approving of Defendant Dukes: False and
> Misleading Court Reports and an Affidavit signed under
> Penalty of Perjury on January 27, 2015. Defendant
> Sasita was present on June 16, 2015 and she was the
> representative present on July 7, 2015 for the
> Department that did not make an appearance at the
> Plaintiff, MC's Trial and she had more than a casual
> appearance as she failed to provide the Plaintiff, MC
> pertinent and material information her actions and
> inactions are the proximate Cause which did aid and
> abet Defendant Hall's misrepresentations concerning
> July 7, 2015. . . .

Doc. 1 at 70. The remainder of the allegations as to Sasita are conclusory, for example, to the effect that Sasita failed to admit wrongdoing and engaged in unconstitutional acts, Doc. 1 at 101, conspired with others to seize plaintiff's grandchild, Doc. 1 at 104, used threats, intimidation, deception, fraud, and coercion, Doc. 1 at 107, acted with willful and conscious disregard of plaintiff's rights, Doc. 1 at 109, and seeks revenge or some other nefarious end. Doc. 1 at 113.

Plaintiff says Odelipe was present at a December 17, 2012,

meeting, Doc. 1 at 53, and that "Program Director Bosede Odelipe

promoted at the beginning of 2014," Doc. 1 at 57. Under a section

titled "Bosede Odelipe," plaintiff says:

> i) Failed to make reasonable efforts to make a
> Permanency Plan before **November 4, 2013** with the
> Plaintiff, MC after a 11 month placement.
> ii) Authorized a **4th Amendment Seizure** when she knew
> that DA had not been harmed in any manner after Tarrant
> County had lost Venue because DA had lived in Jack
> County for 11 months.
> iii) She knowingly authorized an unlawful warrant less
> seizure of a Child in direct violation of the ADA and
> did not ensure a Surrogate was assigned to DA to ensure
> his IEP would be followed.
> . . .
> vii) It is believed that Defendant Bose authorized the
> seizure of DA from Jacksboro Elementary School without
> Consent, a Warrant when no exigency existed.
> viii) M.C. spoke with the Program Director, Bose for
> the [Department] in April of 2014 inquiring about
> Adopting her Grandson. The Defendant Bose is the
> previous CPS Supervisor of Defendant, Davis who seized
> DA from Jack County on November 7, 2013.
> viiii) Defendant Bose informed M.C. that CPS now has
> **"PMC"**. "She really did not know how that could work
> out because the Department now has "PMC" of "DA".
> "Adoption" really is not an option at this point!"
> x) . . . The Plaintiff, MC tried to negotiate with
> Defendant Bose by addressing specific facts about the
> case. . . .
> xi) Defendant Bose did inform the Grandmother that
> since she was not a Party to the Cause 323-97474J-12
> the **"Service Providers"** where [sic] not required to
> provide her any Notifications. The call ended with the
> Program Director wishing the Plaintiff, MC luck but
> there was nothing she could do.

Doc. 1 at 63-65. (The court presumes that the references to

"Defendant Bose" are to Odelipe.)

> Under a paragraph titled "Emily Foote," plaintiff alleges:
>
> On July 7, 2015 this CVS Worker submitted an Affidavit
> to be submitted with the Motion giving SH and AH the
> Permanent Managing Conservatorship of the Minor Child,
> DA. This Affidavit was signed under Penalty of Perjury
> and Notarized. It had on sentence and it was "not
> true!"

Doc. 1 at 65. (The allegedly false affidavit is cited again in

support of plaintiff's claim for misrepresentation. Doc. 1 at

113.) Other allegations are generally that Foote acted with

malice and intent to cause injury to plaintiff in a despicable,

vile and contemptible manner, Doc. 1 at 97, 99, in total

indifference, Doc. 1 at 103, seizing plaintiff's grandchild

without warrant. Doc. 1 at 104.

Parents have a fundamental liberty interest in the care,

custody, and control of their children. Troxel v. Granville, 530

U.S. 57, 65 (2000). The rights of grandparents, however, are not

so clearly established. See Connor v. Deckinga, No. 4:10-CV-855-

Y, 2013 WL 9912151, at *8 (N.D. Tex. Mar. 14, 2013). Although

some courts recognize constitutional protections for grandparents

who have a substantial relationship with their grandchildren,

see, e.g., Johnson v. City of Cincinnati, 310 F.3d 484, 501 (6th

Cir. 2002), it does not appear that the Fifth Circuit has

addressed a case like this one. In fact, the court has not found

or been cited any authority to support the proposition that

18

plaintiff's rights with regard to her grandson were clearly established.

The Fifth Circuit has instructed that cases claiming governmental interference with the right of family integrity are to be analyzed on a case by case basis by placing them on a continuum between the state's clear interest in protecting children and a family's interest in privacy. Morris v. Dearborne, 181 F.3d 657, 671 (5th Cir. 1999). And,

> [w]hen the facts of a case place it in the center of the continuum where the two interests overlap and create a tension, the right to family integrity may properly be characterized as nebulous, and thus a defendant may claim the protection of qualified immunity.

Id. Giving plaintiff the benefit of the doubt, the facts of this case at best place it at the point of the nebulous, entitling the Employees to claim the protection of qualified immunity. Although it appears that plaintiff may not have had proper notice regarding the removal of her grandson, the state obviously had a great interest in his welfare and a right to act when it determined that his welfare was endangered. The record reflects that he was removed after plaintiff allowed him to have contact with his parents, which was prohibited.[9] Plaintiff pursued an

---

[9]In fact, the record reflects that the biological parents' rights have been terminated. State law does not allow plaintiff as a grandparent to seek possession of, or access to, her grandson at this point.

(continued...)

19

appeal and was given an opportunity to participate in the proceedings affecting her grandson. That things may not have gone as she wished does not mean that she was denied any constitutional rights. In any event, despite her prolix complaint, plaintiff fails to allege any facts sufficient to overcome the Employee's rights to qualified immunity.

As Employees note, Texas law does not provide a cause of action for damages for violation of constitutional rights. City of Beaumont v. Bouillion, 896 S.W.2d 143, 147, 150 (Tex. 1995). In other words, there is no state law equivalent to § 1983. Id. And, Employees are entitled to dismissal of the state law tort claims against them. Tex. Civ. Prac. & Rem. Code § 101.106(e); Mission Consl., 253 S.W.3d at 659.

V.

Order

For the reasons discussed herein,

The court ORDERS that the motions of County and Employees to dismiss be, and are hereby, granted, and that plaintiff's claims against said defendants be, and are hereby, dismissed.

---

9(...continued)
Tex. Fam. Code §§ 153.433(a)(1) & 153.434.

The court determines that there is no just reason for delay in, and hereby, directs entry of final judgment as to the dismissal of said claims.

SIGNED December 13, 2016.


_____
JOHN McBRYDE
United States District Judge